Keely E. Duke
ISB #6044; ked@dukescanlan.com
Kevin A. Griffiths
ISB #8187; kag@dukescanlan.com
DUKE SCANLAN & HALL, PLLC
P.O. BOX 7387
Boise, Idaho 83707
Telephone: (208) 342-3310
Facsimile: (208) 342-3299

*Attorneys for Defendants Pine Grove Behavioral Health and Addiction Services and Forrest General Health Services, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WENDY S. HOOD, individually and as surviving spouse of Jacob A. Neufeld and as the Personal Representative of the Estate of Jacob A. Neufeld,<br><br>            Plaintiff,<br>vs.<br><br>KATHRYN D. BEATTIE, M.D., an individual; KURT SEPPI, M.D., an individual; ST. LUKE'S HEALTH SYSTEM, LTD., an Idaho Corporation; ST. LUKE'S CHILDREN'S HOSPITAL, an Idaho Corporation; ST. LUKE'S REGIONAL MEDICAL CENTER, LTD., an Idaho hospital Corporation; PINE GROVE BEHAVIORAL HEALTH AND ADDICTION SERVICES; FORREST GENERAL HEALTH SERVICES, INC., a Mississippi Corporation, d/b/a Pine Grove Behavioral Health & Addiction Services; SOUTHWORTH ASSOCIATES, an Idaho Company,<br><br>            Defendants. | Case No. 1:19-cv-00386-DCN<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS PINE GROVE BEHAVIORAL HEALTH AND ADDICTION SERVICES' AND FORREST GENERAL HEALTH SERVICES, INC.'S MOTION TO DISMISS** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS PINE GROVE BEHAVIORAL HEALTH AND ADDICTION SERVICES' AND FORREST GENERAL HEALTH SERVICES, INC.'S MOTION TO DISMISS - 1**

Defendants Pine Grove Behavioral Health and Addiction Services and Forrest County General Hospital, incorrectly identified as Forrest General Health Services, Inc., (collectively "Pine Grove"), through their counsel of record, respectfully submit the following reply memorandum in further support of Pine Grove's *Motion to Dismiss* [Doc. No. 5], which should be granted for the reasons set forth herein.

## INTRODUCTION

The record before the Court in this matter does not demonstrate sufficient contacts between Pine Grove and this forum to support the exercise of personal jurisdiction over Pine Grove. While Ms. Hood contends that Pine Grove's narrative of its involvement in this matter is "fiction," she provides no facts to contest that narrative. Indeed, she concedes that her husband, upon referral by Southworth, was treated at Pine Grove's facility ***in Hattiesburg, Mississippi*** on two occasions in 2017, focusing instead upon Pine Grove's incidental contacts with citizens of this forum as a basis for personal jurisdiction rather than contacts with the forum itself. [Doc. No. 11, at 2, 4-5]. Apart from incidental contact with Idaho residents arising from Dr. Neufeld's treatment, Ms. Hood points to no other contact at issue in this matter between Pine Grove and the forum. [*Id.*, at 4-8]. This, without more, is insufficient to support the exercise of specific personal jurisdiction over Pine Grove, meaning Pine Grove's *Motion to Dismiss* should be granted.

## ARGUMENT

Ms. Hood does not argue that this Court has general jurisdiction over Pine Grove, so only specific jurisdiction will be discussed. Specific personal jurisdiction requires that (1) the defendant purposefully directed its activities towards Idaho, (2) but for those activities, the claims would not have arisen, and (3) exercise of personal jurisdiction over the defendant is reasonable. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,

1205-06 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Because the record in this matter does not reflect sufficient connections between Pine Grove and the forum to support a finding of purposeful direction of its activities toward Idaho or the reasonableness of the exercise of personal jurisdiction over Pine Grove, its *Motion to Dismiss* should be granted.

### A. Pine Grove lacks sufficient jurisdictional contacts with the forum to support a finding of specific jurisdiction.

Both parties agree that, in order to find that it has personal jurisdiction over Pine Grove, this Court must find that it has specific jurisdiction pursuant to the so-called "effects test," derived from the U.S. Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984) and its progeny. Under this test, in order for this Court to exercise specific jurisdiction, it must find that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods Inc. v. Acherchem Int'l Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671 (9th Cir. 2012)). In *Axiom Foods*, the Ninth Circuit determined that the test for determining whether an alleged tortious act was expressly aimed at the forum should be focused on contacts with the forum itself rather than those residing in the forum based upon the U.S. Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014). *Axiom Foods*, 874 F.3d at 1069-71.

Prior to *Walden*, the Ninth Circuit relied upon a standard referred to as individualized targeting, which found that the effects test was satisfied by a finding that "a defendant 'engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Axiom Foods*, 874 F.3d at 1069 (quoting *Washington Shoe*, 704 F.3d at 765)).

Based upon *Walden*, the Ninth Circuit determined that the individualized targeting standard, without more, is insufficient to comply with due process. *Axiom Foods*, 874 F.3d at 1069. *Axiom Foods* found that this approach relied upon an improper focus on the plaintiff's contacts with the forum and the defendant's knowledge of those contacts. *Id.* Instead, based upon *Walden*, the appropriate focus is the defendant's "own contacts" with the forum. *Axion Foods*, 874 F.3d at 1069. Thus, based on *Axiom Foods*, there must be some showing that the defendant has some contact with the forum state itself, not simply with those who reside there. 874 F.3d at 1070. This finding has been echoed by this Court, which noted that "'the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.' In other words, 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Miesen v. Hawley Troxell Ennis & Hawley LLP*, Case No. 1:10-cv-00404-DCN, 2018 WL 2448450, at *9 (D. Idaho May 31, 2018) (quoting *Walden*, 571 U.S. at 285-86).

The case authority relied upon in opposition to this motion is directly contrary to *Walden* and its progeny and, thus, inapplicable in the case at bar. For example, the Tenth Circuit in *Kennedy v. Freeman*, 919 F.2d 126 (10th Cir. 1990), a decision that predates *Walden*, focused upon whether "the defendant then directed its activities to a forum ***resident***." *Id.* at 129 (emphasis added). It is under this framework that the Tenth Circuit determined that an Oklahoma court could assert personal jurisdiction over a Texas doctor based upon tissue analysis performed in Texas. *Id.* at 127, 129. This holding and the formulation of the effects test upon which it is based is inconsistent with *Walden* and its progeny and, thus, is inapplicable to this case.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS PINE GROVE BEHAVIORAL HEALTH AND ADDICTION SERVICES' AND FORREST GENERAL HEALTH SERVICES, INC.'S MOTION TO DISMISS - 4**

The same is true of *Smith v. United States*, Case No. 15-CV-0391, 2016 WL 4528948 (S.D. Cal. Aug. 30, 2016), which, although decided after *Walden*, fails to appropriately apply its principles, instead relying upon the erroneous formulation of the effects test stated in *Kennedy*. In *Smith*, a California resident underwent a bone biopsy by a California physician who sent the sample to Texas for testing and analysis. *Id.* at *1. The Texas physician prepared and sent two reports concerning analysis of the sample back to the plaintiff's physician in California. *Id.* The Texas physician was subsequently sued in California and sought dismissal based upon lack of personal jurisdiction. *Id.* at *1-2.

Rather than focusing on the defendant's contacts with the forum, the *Smith* court focused on whether the plaintiff received treatment from the physician in the forum or in the physician's home state. *Id.* at *4. Ultimately, the Court found, relying on *Kennedy*, that because the patient's treatment occurred in the forum and the foreign physician willingly accepted the assignment with knowledge that the patient was in the forum, the foreign physician's conduct had effects felt in the forum sufficient for the exercise of personal jurisdiction over him. *See id.* at *4 ("In both cases, the patients' treating physicians who were located in the forum state, solicited the out-of-state doctors to review the biopsies. ***Neither patient traveled to the defendant doctor's home state for treatment.*** Also in both cases, the out-of-state doctors willingly accepted the assignments, evaluated the tissue samples and mailed the reports back to the patients' treating physicians in the forum state. It is reasonable to infer from these facts that [the physician], understood . . . his report . . . would be used to treat Ms. Smith in California." (emphasis added)). The same reasoning is relied upon in *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 827 N.E.2d 1031 (Ill. Ct. App. 2005), which finds that the court has jurisdiction because the medical care the plaintiff received occurred in the forum state. *Id.* at 1041-42.

In reaching its conclusion, the *Smith* court refused to rely upon the California Court of Appeals decision in *Prince v. Urban*, 49 Cal. App. 4th 1056 (1996), which is remarkably similar to the case at bar. In that matter, the plaintiff, a headache sufferer and resident of California, was referred by her local physician to a specialist in Illinois, to whose clinic she traveled to seek treatment. *Id.* at 1059-60. She filled a prescription written by the Illinois physician and had several follow-up calls with his clinic upon her return to California. *Id.* She subsequently brought suit against the Illinois physician in California, who obtained dismissal of the matter from the trial court on the basis of lack of personal jurisdiction. *Id.* at 1059. The California Court of Appeals, relying upon *Wright v. Yackley*, 459 F.2d 287 (9th Cir.1972), affirmed, based upon three factors: (1) "the doctor-patient relationship was not the result of any 'systematic or continuing effort . . . to provide services' to be 'felt' in California, but simply because of a referral by an out-of-state doctor"; (2) "the services rendered by Urban and Diamond were clearly not 'grounded' in any relationship with California" because the patient sought treatment in Illinois; and (3) "the interest of California as a state in insuring the availability of medical care for its citizens dominates over its interest in protecting its citizens from injury by out-of-state doctors." *Prince*, 49 Cal. App. 4th at 1064, 1065 (quoting *Wright*, 459 F.2d at 290-91). *Prince* is nearly indistinguishable from this matter and the *Wright* factors apply here with equal force.

At bottom, the case authority relied upon by Pine Grove and Ms. Hood demonstrates that the relevant inquiries should be what contacts Pine Grove has with Idaho itself, rather than simply with individuals who happen to reside here. Those decisions examining medical malpractice claims specifically indicate that where, as here, the medical care in question did not occur in the forum, those contacts are lacking. Indeed, contact with individuals residing in the forum state rather than the forum itself is the cornerstone of Ms. Hood's arguments. Here, all

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS PINE GROVE BEHAVIORAL HEALTH AND ADDICTION SERVICES' AND FORREST GENERAL HEALTH SERVICES, INC.'S MOTION TO DISMISS - 6**

identified contacts between Pine Grove and the forum are with individuals who reside in the forum rather than the forum itself. In particular, the following contacts between Pine Grove and the forum have been identified as the alleged basis for the exercise of specific jurisdiction:

- Southworth, in Idaho, coordinated to have Dr. Neufeld examined at Pine Grove. [Doc. No. 11, at 4].

- Pine Grove shared the report of its evaluation of Dr. Neufeld with Southworth, St. Luke's and its employees in Idaho, along with weekly reports during Dr. Neufeld's inpatient treatment. [*Id.*, at 5, 7, 16].

- Pine Grove interviewed Dr. Neufeld's present and former colleagues and Ms. Hood, who resided in Idaho. [*Id.*, at 5-6].

- Pine Grove physicians contacted Southworth multiple times to discuss their recommendations concerning Dr. Neufeld. [*Id.*, at 6, 16].

- Pine Grove asked Ms. Hood to come to Mississippi from Idaho for marital counseling during Dr. Neufeld's treatment. [*Id.*, at 7, 16].

- Pine Grove made recommendations upon Dr. Neufeld's discharge that would affect his continued medical practice in Idaho. [*Id.*, at 7-8, 16-17].

All of these contacts are with people and business that are located in Idaho (St. Luke's, Southworth, Dr. Beattie, etc.) and not with the state itself, providing an insufficient basis for specific personal jurisdiction under *Walden* and its progeny. Indeed, as recognized in *Wright*, these contacts were merely "a part of, the earlier treatment" which does not support the exercise of jurisdiction in the patient's home state. *Wright*, 459 F.2d at 289 n.4.

Further, consideration of the three factors relied upon to find a lack of jurisdiction in *Wright* and *Prince* warrant the same finding in this case. First, Dr. Neufeld was referred to Pine Grove by Southworth—not treated by Pine Grove as a result of its presence in Idaho. Second, Pine Grove provided all services to Dr. Neufeld in Mississippi, not Idaho. Unlike *Kennedy*, *Smith,* and *Kostal*, all of the relevant treatment occurred outside of the forum. Indeed, contrary to Ms. Hood's misleading paraphrasing of its mission statement, Pine Grove "has treated patients

*from* . . . 49 states, and several foreign countries," but it does so at is facility in Mississippi, not in those states. [Doc. No. 11-2, at 26].[1] As demonstrated by Ms. Sanford's declaration, Pine Grove does not offer treatment outside of Mississippi, does not offer medical services in Idaho, and did not offer any treatment to Dr. Neufeld in Idaho. [Doc. No. 5-2, ¶¶ 7-9]. Finally, the State of Idaho's interest in the ability of its citizens to seek specialized medical care trumps its interest in its adjudication of this dispute. In light of these considerations and based upon the record before it, this Court should determine that it lacks specific personal jurisdiction over Pine Grove and grant its motion to dismiss.

> **B. Even if this Court finds that Pine Grove's treatment of Dr. Neufeld creates a basis for specific personal jurisdiction, the exercise of personal jurisdiction over Pine Grove in the forum is unreasonable.**

To determine whether the exercise of personal jurisdiction is reasonable, this Court considers seven factors: (1) the extent to which the defendant has personally injected itself into the forum state's affairs; (2) the burden to the defendant of defending claims in the forum; (3) the extent to which there is a conflict of sovereignty between the fora; (4) the interest of the forum state in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the selected forum to plaintiff's receipt of convenient and effective relief; and (7) availability of an alternative forum. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Pine Grove has conceded that factor three is inapplicable and factor six favors litigation in Idaho. Ms. Hood has conceded, with respect to factor seven, that an alternative forum is available, favoring Pine Grove. Thus, only factors, one, two, four, and five are currently at issue, all of which favor Pine Grove's position that the exercise of jurisdiction is unreasonable.

---

[1] Ms. Hood's briefing intimates that Pine Grove has provided this treatment *in* 49 states, which is incorrect. [Doc. No. 11, at 4 n.15].

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS PINE GROVE BEHAVIORAL HEALTH AND ADDICTION SERVICES' AND FORREST GENERAL HEALTH SERVICES, INC.'S MOTION TO DISMISS - 8

      1. *<u>Pine Grove did not interject itself into the forum</u>*.

As discussed, *supra*, at pp. 6-8, Pine Grove's contact with the forum is incidental to its treatment of Dr. Neufeld in Mississippi and insufficient to support the exercise of specific personal jurisdiction over Pine Grove in Idaho. As such, this factor strongly indicates that the exercise of jurisdiction over Pine Grove would be unreasonable.

      2. *<u>Pine Grove would be substantially burdened by litigating in the forum</u>*.

Ms. Hood's argument concerning Pine Grove's burden in defending this matter in Idaho misses the mark. While Pine Grove does indeed employ many of the material witnesses that reside in Mississippi, that does not mean that Pine Grove can compel their attendance at any eventual trial in this matter in Idaho without great burden and expense. This includes any depositions of Pine Grove's employees in Mississippi, which must be defended by its Idaho counsel, creating substantial expense for counsel's travel. Furthermore, to the extent any of those witnesses left Pine Grove's employment, it would have no ability to secure their attendance for a trial in Idaho as they would be well outside of this Court's subpoena power. These burdens on Pine Grove are not alleviated, as Ms. Hood suggests, by "advances in transportation and telecommunications."

      3. *<u>Idaho does not have a substantial interest in adjudicating this matter.</u>*

Ms. Hood's suggestion that Pine Grove "lured" Dr. Neufeld away from Idaho for treatment and that the treatment provided to Dr. Neufeld was not medical care are pure hyperbole. [Doc. No. 11, at 20]. Dr. Neufeld was referred to Pine Grove by Southworth and chose to accept the referral. The referral was to a facility that has a reputation to providing behavioral treatment to medical professionals from across the country. Idaho's interest in

ensuring that this type of specialized medical care is available to its citizens far outweighs its interest in adjudicating this matter.

> 4. *The most efficient resolution of the claims against Pine Grove would be in Mississippi.*

As discussed above, the bulk of the conduct that gave rise to Ms. Hood's claims against Pine Grove took place in and material witness and evidence concerning those claims is located in Hattiesburg, Mississippi. Further, those claims, which are focused upon alleged medical negligence, are far different than those claims alleged against Saint Luke's and its employees, which appear to be focused upon alleged negligence in personnel matters. The Saint Luke's claims are sufficiently different from those against Pine Grove that any efficiencies created by trying them together are outweighed by the inefficiencies created by the location of evidence and relevant witnesses for the Pine Grove claims.

These factors, taken together, warrant a finding that the exercise of jurisdiction over Pine Grove in this forum is unreasonable; thus, Pine Grove's *Motion to Dismiss* should be granted.

### C.  Ms. Hood is not entitled to conduct jurisdictional discovery.

The decision to grant or deny jurisdictional discovery is a matter within this Court's discretion. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). "Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* A district court acts within its jurisdiction on denying jurisdictional discovery "except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Id.*

Here, Ms. Hood has not moved for jurisdictional discovery. Instead, she includes a cursory request at the end of her opposition, noting that jurisdictional discovery is needed. [Doc. No. 11, at 10 n.34, 21]. Ms. Hood has made no showing and provided no argument supporting jurisdictional discovery in this matter. [*Id.* at 21]. In additional to these failures, jurisdictional discovery is unwarranted because the jurisdictional facts are not controverted. The parties agree that Southworth referred Dr. Neufeld to Pine Grove for treatment, which occurred in two separate sessions at Pine Grove's facility in Hattiesburg, Mississippi. The parties further agree that this treatment involved incidental contact between Pine Grove and the forum, including communications and interviews with parties residing in the forum. Ms. Hood's alleged claim arises from these facts. Ms. Hood has also not shown that additional discovery concerning these facts is necessary or will change the outcome of this motion. Accordingly, jurisdictional discovery should not be allowed.

## CONCLUSION

Based upon the foregoing, this Court should find that Pine Grove lacks sufficient minimum contacts with the forum to support the reasonable exercise of personable jurisdiction and dismiss the claims asserted against Pine Grove in this matter.

DATED this 26th day of November, 2019.

                DUKE SCANLAN & HALL, PLLC

                By /s/ Keely E. Duke
                    Keely E. Duke – Of the Firm
                    Kevin A. Griffiths – Of the Firm
                    *Attorneys for Defendants Pine Grove Behavioral Health and Addiction Services and Forrest General Health Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Raymond D. Powers | rdp@powerstolman.com |
| Portia L. Rauer | plr@powerstolman.com |
| Erik F. Stidham | efstideham@hollandhart.com |
| A. Dean Bennett | adbennett@hollandhart.com |
| Alexandra S. Grande | asgrande@hollandhart.com |

/s/Keely E. Duke
Keely E. Duke